UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MICHAEL B. NEVEROSKI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 3:07-CV-291 CAN |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

On June 25, 2007, Plaintiff Michael B. Neveroski (Neveroski) filed his complaint in this Court.  On October 22, 2007, Neveroski filed an opening brief asking this Court to enter judgment in his favor or to remand this matter to the Commissioner.  On January 24, 2008, Defendant Social Security Administration (SSA) filed its response brief.  On February 12, 2008, Neveroski filed his reply brief.  This Court now enters its ruling based upon the record of this case that includes the pleadings, the motions, the administrative record and the briefs of the parties.

**I.     PROCEDURAL BACKGROUND**

Neveroski filed a Title XIV application for SSI payments on June 10, 2003 (Tr. 56-58). The application was denied initially on September 4, 2003, and denied upon reconsideration on February 23, 2004 (Tr. 29-32, 35-37).  Neveroski filed a timely request for hearing on March 22, 2004 (Tr. 20). The hearing was held on January 10, 2006, in South Bend, Indiana before an Administrative Law Judge (ALJ)  (Id.).  A vocational expert  (VE) testified at the hearing (Tr. 20, 343).  In a decision dated August 24, 2006, the ALJ denied Neveroski's application and

found him not disabled (Tr. 20-26).

Neveroski filed a request for review of the hearing decision on September 5, 2006 (Tr. 12). The Appeals Council denied Neveroski's request on March 28, 2007, making the ALJ's decision the final decision of the Commissioner (Tr. at 6). Neveroski filed a timely complaint for judicial review on June 25, 2007. The SSA filed an answer to Neveroski's complaint on August 31, 2007. Neveroski filed a memorandum in support of reversal or remand on October 22, 2007. After two extensions of time, the SSA filed a memorandum in support of the Commissioner's decision on January 24, 2008. On February 12, 2008, Neveroski filed a reply to the SSA's memorandum in support of the Commissioner's decision. This Court may enter a ruling in this matter based on the parties' consent, 28 U.S.C. § 636(c), and 42 U.S.C. § 405(g).

**II.   ANALYSIS**

    A.   Facts

        1.   Background

Neveroski was born on October 23, 1952 and was 53 years old at the time of the hearing (Tr. 56). He is divorced, stands 6' 1" and weighs approximately 200 pounds (Tr. 46). Neveroski completed school through the tenth grade and has some vocational training, but he did not acquire his GED (Tr. 347). His past relevant work includes working as a security guard, a painter and a laborer (Tr. 372).

        2.   Medical Evidence

            a.   Dr. Brian Leon (Dr. Leon)

Dr. Leon saw Neveroski at Wishard Memorial Hospital (Wishard) in Indianapolis on July

9, 2000, for muscle spasms in his legs and hands; Neveroski was treated and left the hospital against medical advice (Tr. 165-66). Neveroski also saw Dr. Leon at Wishard for leg pain on July 28, 2000, and he was given Ibuprofen, Acetaminophen[1] with codeine and Amitriptyline[2] (Tr. 168). Neveroski saw Dr. Leon again on October 3, 2000, for hypertension and continuous pain, and Dr. Leon refilled Neveroski's prescriptions, adding Benazepril (Lotrel)[3], Atenolol and Hydrochlorothiazide[4] (Tr. 167).

### b. Dr. Melvin Richardson (Dr. Richardson)

On May 12, 2003, Neveroski was admitted to La Porte Hospital following a seizure, and Dr. Richardson noted that Neveroski had previously fallen off a ladder and fractured his pelvis due to questionable seizure activity (Tr. 188). Neveroski was reported to have a history of peptic ulcer disease, possibly have early Wernicke's-Korsakov[5] symptoms due to his history of hypertension, and have significant hypokalemia[6] (Tr. 170). Dr. Richardson found no evidence that Neveroski had alcoholic liver disease, but he did note that Neveroski had a significant history of substance abuse, but Neveroski refused Alcoholics Anonymous (AA) meetings and

---

[1] Acetaminophen is an anti-pyretic and analgesic, with potency similar to that of aspirin. Steadman's Medical Dictionary 28th Ed. 11 (Tiffany Piper et. al. eds. 2006) [hereinafter "SMD"].

[2] Amitriptyline is a chemical compound of the tricyclic antidepressant class than can be used to treat some sleep disorders and neurogenic pain symptoms. SMD. at 63.

[3] Lotrel is prescribed for the treatment of hypertension. Physician's Desk Reference, 1624 (61st Ed. 2007).

[4] Hydrochlorothiazide is a potent orally effective diuretic and antihypertensive agent related to chlorothiazide. SMD at 910.

[5] Wernicke's-Korsakov syndrome is often characterized by lesions in the mammilary bodies and medial dorsal thalamic nucleus. SMD at 1918.

[6] Hypokalemia is the presence of an abnormally low concentration of potassium ions in the circulating blood; occurs in familial periodic paralysis and in potassium depletion due to excessive loss from the gastrointestinal tract or kidneys. SMD at 934.

counseling (Tr. 170-71).

Neveroski saw Dr. Richardson again on June 6, 2003 for a follow-up (Tr. 228). Dr. Richardson reported that Neveroski had cogwheel rigidity in both extremities, exhibited a remarkable heel shin test on the left leg with some mild clonus in the right lower extremity, was unable to perform a Patrick test, had a significant foot drop in the left leg, and suffered damage to the sciatic nerve during repair of pelvic fracture (Tr. 228-29). Dr. Richardson diagnosed Neveroski with questionable demyelinating neuropathy and a central tremor (Tr. 229).

Neveroski also saw Dr. Richardson on August 29, 2003 (Tr. 224). Dr. Richardson found that Neveroski was extremely dysthymic, had not been eating on a regular basis and exhibited depressive symptoms (Id.). Dr. Richardson also reported that Neveroski stated that he could not do without alcohol, but refused any social or medical intervention for his alcohol abuse (Id.).

    c. Dr. Ralph Inabnit (Dr. Inabnit)

On January 19, 2004, Neveroski was seen by a DDS-selected doctor, Dr. Inabnit, for an evaluation and was noted to be a vague historian with a fragmented history, to have memory impairment and cognitive defects (Tr. 252). Dr. Inabnit also found that Neveroski had diminished range of motion of his cervical spine and lumbar spine, evidence of peripheral neuropathy, and a bilaterally abnormal Romberg[7] (Tr. 262, 259). Neveroski reported to Dr. Inabnit that he drank hard liquor and beer on a daily basis and he had alcohol on his breath at the examination (Tr. 252, 261).

    d. Mary Anne Miller (Miller) and Dr. John T. Heroldt (Dr. Heroldt)

On August 11, 2003, DDS-selected social worker Miller and supervising clinical

---

[7] The Romberg Sign is when a patient, standing with feet approximated, becomes unsteady or much more unsteady with eyes closed. SMD at 1771.

4

psychologist Dr. Heroldt conducted a clinical interview and mental status examination of Neveroski as well as administered a Wechsler Adult Intelligence Scale (WAIS) (Tr. 208-211). Neveroski stated that he drank every day and even before coming to the examination, but the examiners' report notes show that he did not appear to be intoxicated and had WAIS scores ranging from extremely low to average (Tr. 208-9). Neveroski was diagnosed with alcohol dependence and a cognitive disorder, and was reported not to be capable of handling his own funds (Tr. 210).

      e.  Dr. J. Gange (Dr. Gange)

On August 29, 2003, Dr. Gange, a state agency psychologist completed a Psychiatric Review Technique form (PRTF) assessing Neveroski's impairments under the category of 12.02 organic medical disorders and reporting that he meets listing 12.09, denoting a substance addiction disorder (Tr. 274-275). Dr. Gange indicated that Neveroski had moderate restriction of activities of daily living and marked difficulties in maintaining social functioning and in maintaining concentration, persistence or pace (Tr. 284). However, Dr. Gange noted that Neveroski's drug abuse and alcoholism (DAA) were "material" to his findings (Tr. 286). In February 2004, Dr. W. Shipley, also a state agency psychologist, affirmed Dr. Gange's findings. (Tr. 274).

      f.  Dr. Ahmad O. Raslan (Dr. Raslan)

On December 26, 2003, Neveroski was admitted to La Porte Hospital following a seizure secondary to alcohol withdrawal, alcohol dependence and hypertension (Tr. 231). Neveroski reported drinking 6-7 beers per day, although attending physician Dr. Raslan reported that Neveroski "most likely drinks more than that and maybe even double on the weekends" (Tr.

5

236). Neveroski was given Librium[8], folic acid, Thiamine and a multivitamin and discharged on December 28, 2003 (Tr. 231).

### g. Dr. B. Whitley (Dr. Whitley)

On February 11, 2004, Dr. Whitley, a state agency medical consultant, completed an RFC indicating that Neveroski could perform medium work with no climbing of ladders, ropes and scaffolds and no exposure to hazardous materials (Tr. 264-73).

### 3. Neveroski's Testimony

Neveroski testified that the last time he worked was in 2003 (Tr. 347). He said he was fired because he could not walk and that he received unemployment compensation (Tr. 347-348). Neveroski said that he had pain from his waist down and in his lower back and that he can only lift with one hand at a time because he needed an open hand to maintain his balance (Tr. 350-51).

Neveroski said that he shattered his pelvis in 2000, when the bottom of a ladder came out from under him and he fell (Tr. 352). After doctors took X-rays at La Porte Hospital, Neveroski was transported to Indianapolis where he underwent an operation and spent six months in rehabilitation (Tr. 352-53). Neveroski was treated by Dr. Leon and received physical therapy and medication (Tr. 353). Neveroski continued to see Dr. Leon about once a month until 2003 when Neveroski returned to La Porte (Id.).

Neveroski testified that on a typical day, he gets up at 6 a.m., has breakfast and watches television all day (Tr. 355-56). He said that he lives in a group home and that he tidies up his room, but does not do other chores (Tr. 356). Prior to living in the group home, Neveroski was

---

[8] Librium is prescribed for the treatment of anxiety and acute alcohol withdrawal. Physician's Desk Reference, Supra note 3, at 3347.

homeless after moving out of his sister's residence (Id.). Neveroski mowed the lawn and vacuumed when he lived with his sister (Tr. 356-57). He also could do laundry, prepare his own meals and dress and bathe himself (Tr. 357). Neveroski also enjoys walking and said he tries to walk a mile a week (Tr. 358).

Neveroski testified that he was taking Zoloft for his depression and alcoholism and that he felt his depression affected his ability to work (Id.). Neveroski belongs to no social organizations, does not see friends and said that he does not like being around people (Tr. 360). He sees his sister about once a month (Tr. 359).

Neveroski also testified that he could walk for two or three hours during an eight hour period, could lift about 100 pounds and could sit for eight hours as long as he was allowed to stretch once an hour (Tr. 362). Neveroski said that he drinks a fifth of vodka alone about twice a month and that he thinks alcohol affects his ability to work (Tr. 363). Neveroski could not drink while he was in the hospital in 2000 and spent some time after that in an AA program where he could not drink and was allowed to live for free until he found a job; Neveroski did not find the AA program helpful (Tr. 365).

    B.    Standard of Review

The standard of review for an ALJ's decision is whether it is supported by substantial evidence and free of legal error. See 42 U.S.C § 405(g); Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005); Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005); Golembiewski v. Barnhart, 322 F.3d 912, 915 (7th Cir. 2003). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support such a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1972). The reviewing court must not re-

evaluate the facts, re-weigh the evidence or substitute its own judgment for that of the ALJ. Griffith v. Callahan, 138 F.3d 1150, 1152 (7th Cir. 1998). However, the ALJ must build a logical bridge from the evidence to his conclusion. Haynes, 416 F.3d at 626. Because the ALJ is in the best position to observe the demeanor of witnesses, the reviewing court will not disturb the ALJ's credibility determinations so long as they find some support in the record and are not "patently wrong." Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994). An ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003). However, an ALJ's legal conclusions are reviewed de novo. Haynes, 416 F.3d at 626.

      C.     Neveroski's Motion for Summary Judgment or Remand

The Social Security Act provides for the payment of SSI benefits to disabled individuals whose income falls below stated levels. See 42 U.S.C. § 1381(a). The Act defines disabled as:

> unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c (a)(3)(A). The Act further states that a person is under a disability:

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c (a)(3)(A). Social Security regulations establish a sequential five-part test to determine whether a claimant is disabled. The ALJ must consider whether (1) the claimant is

presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to prevent substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.  20 C.F.R §§ 404.1520(a)(4)(i)-(v), 416.920; Briscoe, 425 F.3d at 352.  Should the ALJ find that the claimant is disabled or not disabled at any step, he may make his determination without evaluating the remaining steps.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  An affirmative answer at either step three or step five will result in a finding of a disability.  Briscoe, 425 F.3d at 352.  At step three, if the impairment meets any of the severe impairments listed in the regulations, the impairment is acknowledged by the Commissioner.  See 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. app. 1, subpart P, § 404.  However, if the impairment is not so listed, the ALJ assesses the claimant's residual functional capacity (RFC), which in turn is used to determine whether the claimant can perform his past work under step four and whether the claimant can perform other work in society under step five.  20 C.F.R. § 404.1520(e).  The claimant bears the burden of proof on steps one through four, but the burden shifts to the Commissioner at step five.  Id.

    The ALJ found that Neveroski's RFC allowed him to perform past relevant work at step four.  As a result, Neveroski was not disabled.  Neveroski asserts several arguments attacking the ALJ's assessment of his case.  First, Neveroski contends that the ALJ made an improper credibility finding that ignores SSR 96–7p and 20 C.F.R. § 404.1529.  Second, Neveroski argues that the ALJ failed to incorporate all of his limitations into the RFC.  Finally, Neveroski asserts that the ALJ erroneously found him to be able to perform past relevant work.

1.     The ALJ's credibility evaluation of Neveroski's physicians is supported by substantial evidence

A physician is not a treating physician unless he or she has an ongoing relationship with the claimant.  White v. Barnhart, 415 F.3d 654, 658 (7th Cir. 2005).  An ongoing relationship is one in which "the medical evidence establishes that you see or have seen  the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for . . . medical condition(s)."  20. C.F.R. § 404.1502.  More weight is generally given to the opinion of a treating physician because he is more familiar with the claimant's conditions and circumstances.  20 C.F.R. § 404.1527(d)(2);  Clifford v. Apfel, 227 F.3d 863, 870 (7th Cir. 2000).  An ALJ is entitled to reject a non-treating physician's opinions in favor of other physicians' opinions and evidence in the record.  Haynes, 416 F.3d at 631.

An ALJ is to give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with other substantial evidence in the record.  Hofslien v. Barnhart, 439 F.3d 375, 376 (7th Cir. 2006). However, medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence in the record.  Clifford, 227 F.3d at 870.  When evidence in opposition to the presumption is introduced, the rule drops out and the treating physician's evidence is just one more piece of evidence for the ALJ to weigh.  Hofslien, 439 F.3d.at 377 (citations omitted). Unfortunately, there is no bright line for when a physician's opinion is inconsistent with other substantial evidence in the record, and it is essentially a case by case determination depending on the circumstances.  Id.  Neveroski argues that the ALJ failed to give proper weight to the findings of two of his physicians.

10

        a.        <u>Dr. Inabnit</u>

Neveroski argues that the ALJ failed to discredit Dr. Inabnit's findings and instead simply held that the objective medical evidence did not support Neveroski's testimony that he can only perform a limited amount of walking and standing.  Although Dr. Inabnit found that Neveroski had a significant foot drop and damage to his sciatic nerve from repair to the fracture and diagnosed Neveroski with possible demyelinating neuropathy and a central tumor, he failed to give an opinion regarding Neveroski's physical limitations or acknowledge the existence of a disability.  More importantly, Dr. Inabnit is not a treating physician.  The record indicates that Neveroski only saw Dr. Inabnit on one occasion (Tr. 252), which is not enough to constitute an ongoing relationship.  <u>See</u> 20. C.F.R. § 404.1502; <u>Haynes</u>, 416 F.3d at 631.  The ALJ was within his right to reject Dr. Inabnit's findings in favor of other physicians' opinions in the record because Dr. Inabnit was a non-treating physician.  Therefore, the ALJ did not err in assessing the credibility of Dr. Inabnit.

        b.        <u>Dr. Richardson</u>

Neveroski argues that the ALJ failed to award Dr. Richardson's findings controlling weight, which Neveroski claims support his testimony that he can only perform a limited amount of walking and standing.  The record shows that Dr. Richardson was one of Neveroski's treating physicians, as he had an ongoing relationship with Neveroski (Tr. 170-230).  Although an ALJ is to give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with other substantial evidence, Dr. Richardson never gave an opinion.  Dr. Richardson found that Neveroski had cogwheel rigidity in both extremities, exhibited a remarkable heel shin test on the left leg with

11

some mild clonus in the right lower extremity, was unable to perform a Patrick test, had a significant foot drop in the left leg, and suffered damage to the sciatic nerve during repair of pelvic fracture.  However, Dr. Richardson never issued an opinion regarding Neveroski's disability, nor did Dr. Richardson ever even opine that Neveroski was physically limited. Without an opinion from Dr. Richardson as to Neveroski's physical limitations, there is no support for the proposition that the physical RFC[9] accepted by the ALJ was contradictory to the opinion of a treating physician.  Therefore, the ALJ committed no error in evaluating determining Dr. Richardson's findings.  Because Dr. Inabnit was not a treating physician and Dr. Richardson failed to give an opinion, this Court finds that the ALJ's credibility assessment of those physicians was supported by the evidence and free of error.

## 2.     The ALJ's credibility evaluation of Neveroski's testimony was reasonable and supported by substantial evidence

Because an ALJ is in a special position where he can hear, see, and assess witnesses, his credibility determinations are given special deference, and as a result, his credibility determinations will only be overturned if they are patently wrong.  Jens v. Barnhart, 347 F.3d 209, 213 (7th Cir. 2003).  "Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported...can the finding be reversed." Prochaska v. Barnhart, 454 F.3d 731, 738 (7th Cir. 2006) (citations omitted).  As a bottom line, an ALJ is required to articulate specific reasons in a credibility finding.  Steele v. Barnhart, 290

---

[9] "The Claimant has the residual functional capacity to lift/carry 50 pounds occasionally and 25 pounds frequently; the claimant can stand/walk about six hours in an eight-hour work day; the claimant can sit about six hours in an eight-hour work day; the claimant should never climb ladders, ropes or scaffolds; the claimant can frequently climb ramps and stairs, balance, stoop, kneel, crouch and crawl.  The claimant should avoid even moderate exposure to hazards." (Tr. 23).

F.3d 936, 942 (7th Cir. 2002). The ALJ may not simply recite the factors that are described in the regulations for evaluating symptoms. Zurawski v Halter, 245 F.3d 881, 887 (7th Cir. 2001). When an ALJ's determinations are based on objective factors rather than subjective considerations, such as the client's demeanor, there is greater freedom to review the ALJ's decision. Clifford, 227 F.3d at 872. However, an ALJ is not required to provide a "complete written evaluation of every piece of testimony and evidence," Rice v. Barnhart, 384 F.3d 363, 370 (7th Cir. 2004) (quoting Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995)).

Neveroski contends that the ALJ made an improper credibility finding under SSR 96-7p and 20 C.F.R. § 404.1529 when the ALJ found Neveroski's allegations regarding his limitations were "less than fully credible." This court disagrees.

In his assessment of Neveroski's credibility, the ALJ did more than simply state that Neveroski was not credible. In his opinion, the ALJ wrote:

> [t]he objective medical evidence does not support the claimant's testimony that he is limited to performing a limited amount of standing as he described, due to pain. The medical evidence of record shows that most of the claimant's problems relate to his excessive use of alcohol. The evidence shows that the claimant is a regular and heavy user or alcohol. He has had significant legal problems and lost a number of jobs because of alcohol. Therefore, in accordance with SSR 96-7p, the undersigned finds that the claimant's testimony is less than fully credible.

(Tr. 24). This Court finds that there is evidence in the record that supports the ALJ's credibility finding. Neveroski contends that the ALJ's credibility finding was erroneous because there was evidence on record supporting his alleged physical limitations and that the ALJ ignored parts of his testimony indicating that he has problems walking, standing, balancing and sitting and needs one hand free at all times while walking to maintain balance. In his opinion, the ALJ considered

13

evidence both in support of his findings and in support of Neveroski's claims (Tr.24), and this Court must not re-evaluate the facts, re-weigh the evidence or substitute its own judgment for that of the ALJ.  Griffith, 138 F.3d at 1152.  The ALJ's finding was consistent with the record. The medical reports show that Neveroski was treated on several occasions for symptoms related to his drinking habit (Tr. 170-72, 231, 236, 288-89).  In his own testimony, Neveroski said that he thought alcohol affected his ability to work (Tr. 358).  Neveroski also admitted that he had lost a job because of drinking, (Tr. 311) that he "cannot do without alcohol," (Tr. 224). Therefore, this Court finds that the ALJ's assessment of Neveroski's credibility was reasonable and supported by substantial evidence.

     Neveroski also argues that the ALJ's finding that alcoholism makes Neveroski not credible was erroneous.  This Court finds that Neveroski has misconstrued the ALJ's credibility finding.  The ALJ's opinion did not state that he found Neveroski not credible because of his alcoholism, but instead the ALJ found that the medical evidence indicated that Neveroski's problems emanated from his excessive use of alcohol as opposed to the inability to walk or stand due to pain.

     Neveroski further argues that Carradine v. Barnhart, 360 F.3d 751 (7th Cir. 2004) warrants a reversal of the ALJ's decision.  However, this Court finds that Neveroski has misinterpreted the 7th Circuit's holding in Carradine.  In Carradine, the ALJ found the claimant's testimony to be inconsistent with the activities she admitted to engaging in, such as performing household chores and taking long walks.  Carradine, 360 F.3d at 755.  The 7th Circuit held that when the record contained several references to the claimant taking pain medication and doctor's reports that she was in pain, an analysis that a claimant is not credible

14

because her claims are not consistent with her daily activities is insufficient.  Id. at 756.
However, the case at bar is distinguishable from Carradine because the ALJ provided a logical line of reasoning for finding Neveroski not credible other than an inconsistency between Neveroski's daily activities and Neveroski's claims of pain.  The ALJ wrote that the objective medical evidence supported a finding that most of Neveroski's problems were caused by his alcohol consumption as opposed to pain, and the ALJ did not even mention an inconsistency between Neveroski's claims and his daily activities as a reason for finding Neveroski not credible (Tr. 24).  Therefore, this Court finds that the ALJ's reasoning was not patently wrong nor contrary to Carradine.

In sum, this Court finds Neveroski's argument contesting the ALJ's credibility assessment of Neveroski unpersuasive because the ALJ provided an adequate discussion that was supported by evidence in the record.  Furthermore, this Court finds that Carradine does not control the case at bar.

### 3. The ALJ'S RFC was supported by substantial evidence

Neveroski argues that the ALJ did not take into account any of his mental impairments and did not render a proper mental RFC by accepting Dr. Whitley's opinion while rejecting the opinions of Dr. Gange and Dr. Shipley without an explanation.  The ALJ found that Neveroski's mental impairments were severe, but that they did not meet a listing under 12.02 or 12.09 (Tr. 23).  An ALJ is to give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with other substantial evidence in the record.  Hofslien, 439 F.3d at 376.  An ALJ is entitled to reject a non-treating physician's opinions in favor of other physicians' opinions and evidence in the record.

15

Haynes, 416 F.3d at 631.

The record indicates that each of the aforementioned doctors saw Neveroski one time. Those doctors were not treating physicians because they had not "seen [Neveroski] with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for . . . medical condition(s)." See 20. C.F.R. § 404.1502.  Thus, the ALJ was entitled to give less weight to Dr. Gange's and Dr. Shipley's opinions than to Dr. Whitley's.  This Court will not accept Neveroski's invitation to re-weigh the evidence or substitute its own opinion in place of the ALJ's.  See Griffith, 138 F.3d at 1152.  Therefore, the ALJ committed no error in deciding not to incorporate mental limitations into his RFC.[10]

### 4. The ALJ properly found Neveroski could perform past relevant work and his step four decision is proper

In step four, the ALJ must determine if the claimant has an RFC that permits him to perform his past relevant work.  20 C.F.R. § 404.1520(e).  In determining if the claimant can perform his past relevant work, the ALJ must compare the demands of the work with his present capacities.  Strittmatter v. Schweiker, 729 F.2d 507, 509 (7th Cir. 1984).  In step five, if the claimant cannot perform his past relevant work, then the ALJ must determine if he can perform other work in society.  20 C.F.R. § 404.1520(g).

During a hearing held on January 10, 2006, a vocational expert (VE) testified that

---

[10] Neveroski raises a third issue regarding the ALJ's failure to perform a Drug & Alcohol Abuse Analysis stating that "whether or not a Neveroski's drug or alcohol abuse aggravated a Neveroski's mental illness does not prove that the mental illness itself is not disabling."  Kangail v. Barnhart, 454 F.3d 627, 629 (7th Cir. 2006). However, the mental illnesses to which Neveroski refers were diagnosed by Dr. Gange and Dr. Whitley, and the ALJ was entitled to reject these opinions in favor of other medical opinions in the record because the doctors were non-treating physicians.

16

Neveroski's past work as a security guard was semi-skilled in nature and at the light level of physical tolerance (Tr. 372).  Neveroski's work as a painter was medium-skilled and heavy as performed, and his work as a laborer at a foundry was unskilled and heavy as performed (Id.). The ALJ presented the following hypothetical to the VE:

> [a]n individual with the age of 50 to 53, educated at the tenth level, and the past relevant work the same as the claimant's.  Limited to lifting and carrying 50 pounds occasionally and 25 pound frequently.  Stand, walk and sit about six hours in an eight hour work day.  Never climb ladders, ropes, or scaffolds.  Frequently climb ramps and stairs.  Balance, stoop, kneel, crouch and crawl.  Must avoid even moderate exposure to hazards.

(Tr. 373).  In response to the foregoing hypothetical, the VE said that the individual could return to work as a painter or a security guard (Id.).  In Neveroski's region alone, there are 74 positions as a security guard at the sedentary level (Id.).  The VE also testified that there were 17,821 light unskilled occupations, 21,225 medium level occupations, and 13,850 sedentary level occupations that the individual would be capable of performing (Tr. 374).

When the ALR varied the hypothetical by assuming that he found Neveroski's testimony fully credible and all of his impairments supported by the medical evidence, the VE testified there would be no jobs because of Neveroski's advanced age and lack of transferrable skills to the sedentary level of physical tolerance (Id.).

Neveroski contends that  the ALJ erroneously found him to be able to perform past relevant work as a painter or a security guard, arguing that the finding that he could work as a painter is inconsistent with the  RFC, which said that he should never climb ladders, ropes or scaffolds.  Furthermore, he contends that his problems standing and walking would prohibit him from fulfilling the responsibilities of either a painter or a security guard.  This Court disagrees.

17

Even if the ALJ erred in his finding that Neveroski could perform his past work as a painter because the ALJ's RFC finding mentioned no ladders, it was harmless because Neveroski could perform his duties as a security guard. The basis for Neveroski's inability to stand and walk comes from Neveroski or his doctors. This Court has already found that the ALJ did not err in assessing Neveroski's credibility nor in weighing Neveroski's physicians' findings. Whatever weight the ALJ gave to other evidence was at his discretion. Jens, 347 F.3d at 212. This Court will not re-weigh factual determinations. As discussed above, the ALJ did not err in the consideration of Neveroski's impairments, and thus, he did not err in the assessment of his RFC. As a consequence, the ALJ did not err in the development of the hypothetical he posed to the VE by including Neveroski's RFC as the ALJ assessed it. The ALJ based his determination on the testimony of the VE, which was reasonable. Thus, the ALJ's determination that Neveroski could perform past relevant work under step four is supported by substantial evidence, and therefore, his decision is entitled to deference.[11]

### III.   CONCLUSION

This Court finds that the ALJ's credibility assessments of Neveroski's physicians and of Neveroski's testimony were supported by substantial evidence, that the ALJ's RFC was supported by substantial evidence, and that the ALJ properly found that Neveroski could perform his past relevant work. Therefore, this Court **DENIES** Neveroski's request [Doc. No. 18 ] and **AFFIRMS** the ALJ's decision. The clerk is instructed to term the case.

---

[11] Neveroski's final argument is that the ALJ erroneously found Neveroski able to perform medium, light and sedentary jobs and the ALJ's step five decision was not supported by substantial evidence. An ALJ is required to preform a step five analysis only if the ALJ determines that a claimant is unable to do his past relevant work in step four. This Court has held that the ALJ's step four finding was proper, and therefore, this Court need not address the ALJ's step five decision.

**SO ORDERED.**

Dated this 26th Day of June, 2008.

                                                S/Christopher A. Nuechterlein
                                                Christopher A. Nuechterlein
                                                United States Magistrate Judge